23 F.3d 410
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Gene V. GRAHAM, Plaintiff/Appellant,
v.
Carolyn SCHOMAKER, et al., Defendants/Appellees.
 No. 93-1942.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 27, 1994.*
Decided May 3, 1994.
 
 Appeal from the United States District Court for the Northern District of Indiana, South Bend Division, No. 93 C 005, Hon. Robert L. Miller, Jr., Judge.
 
 
 1
 N.D.Ind.
 
 
 2
 AFFIRMED.
 
 ORDER
 
 3
 Gene Graham appeals from the denial of his motion for a preliminary injunction. We AFFIRM for the reasons stated in the attached district court order of April 5, 1993.
 
 ATTACHMENT
 
 4
 UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF INDIANA
 
 SOUTH BEND DIVISION
 GENE VONTELL GRAHAM, Plaintiff
 
 5
 vs.
 
 
 6
 CAROLYN SCHOMAKER, et al., Defendants.
 
 
 7
 CAUSE NO. 593-CV-5.
 
 
 8
 April 5, 1993.
 
 MEMORANDUM AND ORDER
 
 9
 MILLER, District Judge.
 
 
 10
 Two motions pending in this case are ripe for ruling. The defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), and plaintiff Gene Vontell Graham has moved for a preliminary injunction. Mr. Graham's pro se complaint contains the following factual allegations, which must be construed generously and taken as true for purposes of the dismissal motion:
 
 
 11
 Mr. Graham was diagnosed as having hypertension in 1977. Upon his arrival at the Westville Correctional Center in January, 1988, Dr. Benin placed Mr. Graham on a "2 gram sodium diet", which was updated later in 1988 and again in 1989. On December 15, 1992, Dr. Bautista ordered an "open-low cholesterol diet" for Mr. Graham. The following day, defendant Carolyn Schomaker told Mr. Graham of the diet change and asked him to sign a copy the following memorandum, dated March 19, 1987, which apparently was sent by the Assistant Superintendent of Programs to the Supervisor of Classifications and the Health Care Services Administrator:
 
 
 12
 It has come to my attention that offenders with prescribed diets have been approved for Work Release/RCA participation. This has resulted because this office failed to consider the provisions of DOC Policy # 01-01-601, "FOODSERVICE" and to incorporate a system of offender notification within existing procedures.
 
 
 13
 Policy # 01-01-601, item 23., page 10 of 15, provides that,
 
 
 14
 "When an offender accepts a community corrections placement, the privilege of having provisions for a prescribed diet is relinquished ... The offender shall be notified prior to accepting a community corrections placement of the facility's inability to deliver prescribed diets."
 
 
 15
 Effective immediately, please implement the following procedures in your respective areas:
 
 
 16
 1. Offender Orientation shall include reference to the stipulations of prescribed diets as part of the Work Release/RCA section of the program.
 
 
 17
 2. At the time the offender is provided a "Prescribed Diet Identification Card" Health Care staff shall advise the offender that the special diet is part of his/her medical treatment, and as such, precludes his/her participation in the Work Release/RCA program for the duration of the treatment.
 
 
 18
 3. The Health Care Services designee responsible for entering information in Section 3 of the Work/study Release-RCA: Notification, Statement and Clearance, State Form 9319, shall indicate "Non-clearance" for any offender currently subject ot [sic] a prescribed diet.
 
 
 19
 Please advise if you have any questions concerning these procedures.
 
 
 20
 Mr. Graham understands this policy to be based on the proposition that the Department of Corrections has a lesser responsibility to satisfy prescribed diets depending on the offender's placement within the prison system. Mr. Graham disagrees with this policy, and so refused to sign the memorandum. Mr. Graham believes he is ineligible for such assignments in any event.
 
 
 21
 Mr. Graham alleges that Ms. Schomaker became irate upon his refusal to sign. Nurse Dawn Kortman made a comment and Mr. Graham told her to stay out of it; Ms. Kortman allegedly threatened to deny Mr. Graham medical services in the future and expressed the hope that Mr. Graham died of a heart attack. Ms. Schomaker prepared a conduct report charging Mr. Graham with refusal to leave the medical room.
 
 
 22
 Mr. Graham further alleges that Ms. Kortman called dietician Jerry Ayala and told him not to honor the diet Dr. Bautista had prescribed. Upon learning of this, Mr. Graham showed Hugh Vales Dr. Bautista's order and explained the problem he was having with nurses Schomaker and Kortman. Mr. Vales called the medical room, but did not direct the dieticians to honor Dr. Bautista's order. The next day, Mr. Graham showed Mr. Ayala Dr. Bautista's order; Mr. Ayala called his supervisor, Ms. Barbara Jones, who told him not to honor the diet Dr. Bautista had prescribed.
 
 
 23
 Mr. Graham alleges that he is doing without the prescribed diet at the present. He has sued Ms. Schomaker, Ms. Kortman, Ms. Jones, Mr. Vales and Mr. Ayala, seeking injunctive relief and damages pursuant to 42 U.S.C. Sec. 1983. The court has jurisdiction pursuant to 28 U.S.C. Sec. 1343. He also seeks a preliminary injunction requiring compliance with Dr. Bautista's prescription.
 
 
 24
 The defendants seek the complaint's dismissal on two grounds; neither ground is persuasive. First, they argue that they have no authority to determine whether Mr. Graham should be on a special diet; that decision properly is made by a doctor. This, it seems, is precisely Mr. Graham's point. He contends that the doctor ordered a low cholesterol diet for Mr. Graham, and the defendants countermanded that order. Such conduct, if proven, could constitute a violation of the Eighth Amendment. Second, the defendants argue that the case is moot because, "In the present case, Plaintiff is currently receiving a low cholesterol diet." This argument fails for two reasons: (1) the complaint alleges that Mr. Graham is not receiving such a diet, and the court must accept those allegations as true; and (2) even if he had begun receiving such a diet after the complaint was filed, the damage claim would not be moot.
 
 
 25
 Accordingly, the motion to dismiss must be denied.
 
 
 26
 The defendants have filed various records in opposition to Mr. Graham's motion for a preliminary injunction, and assert that those records "clearly" show that Mr. Graham is receiving a low cholesterol diet. The court cannot agree that the records are clear, but they strongly suggest that Dr. Bautista's order was honored at least by January 3, 1993.
 
 
 27
 The diet list for the two weeks before December 13 carry a typewritten notation of "2gm/NO PORK" for Mr. Graham. The list for the week of December 13 has the "2gm" portion of the notation scratched out, with "low chol" handwritten below it. The December 20 list has the entire "2gm/NO PORK" notation scratched out, with "low chol" handwritten below it. The December 27 list has no reference to a low cholesterol diet; written below the "2gm/NO PORK" notation is "D/C per med. room". Each week's list thereafter, however, reflects Mr. Graham's diet as "LOW CHOL NO PORK". Those records suggest that from January 3 on, Mr. Graham has been served a low cholesterol diet without pork.
 
 
 28
 In seeking a preliminary injunction, Mr. Graham bears the burden of showing: (1) that he movant will suffer irreparable harm without the preliminary injunction; (2) that the harm he will suffer without injunctive relief is greater than the harm the defendants will suffer as a result of injunctive relief; (3) a reasonable likelihood of success on the merits; and (4) that the injunction will not harm the public interest. S.E.C. v. Cherif, 923 F.2d 403, 407-408 (7th Cir.1991). Mr. Graham has not shown that he will suffer irreparable harm if no injunction issues.
 
 
 29
 Mr. Graham's complaint alleged that he was not receiving a low cholesterol diet by December 31, the day he signed his complaint. The diet list for the week of December 27 seems to corroborate that allegation; that record indicates that the diet restriction was to be discontinued pursuant to an order from the medical room where Mr. Graham contends Ms. Schomaker and Ms. Kortman work. But the balance of the records submitted to the court indicate that Mr. Graham has received the prescribed diet since January 3, and Mr. Graham has not submitted any reply disputing what the defendants contend the records show.
 
 
 30
 Mr. Graham is receiving the prescribed diet without the benefit of an injunction; he faces no threat of irreparable harm. Accordingly, the motion for a preliminary injunction must be denied. Mr. Graham may renew his motion if he is denied his prescribed diet in the future.
 
 
 31
 Accordingly, the court now: (1) DENIES the defendants' motion to dismiss the complaint; and (2) DENIES the plaintiff's motion for a preliminary injunction. Because the defendants have not had time to respond to Mr. Graham's motion to amend his complaint, the court defers ruling on that motion.
 
 
 32
 SO ORDERED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal is submitted on the briefs and record